SUEGA of Tau, Manua; TULIAU of Tau, Manua; TELEAI T. FOFO of Tau, Manua; Objectors

v.

IOSEFA F. SUNIA of Fagatogo, Applicant

No. 4-1962

[See also No. 13-1962, Appellate Division, 4 A.S.R. 858]

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Title: "Fofo" of Ta'u]

February 21, 1962

Aumoeualogo, Counsel for Tuliau.
Ma'o, Counsel for Teleai T..
Muagututia, Counsel for Iosefa F. Sunia.

OPINION OF THE COURT

MORROW, *Chief Judge.*

Iosefa F. Sunia filed his application with the Registrar of Titles to be registered as the holder of the matai name Fofo attached to the Village of Tau, Manua.

Suega, Tuliau, and Teleai T. each filed an objection to the proposed registration, each of them becoming a candidate for the name. Hence, this litigation. See Section 932 of the A. S. Code.

Shortly after the hearing began, Suega withdrew his objection and ceased to be a candidate for the name and a party in the case.

Section 926 of the A. S. Code, as amended, prescribes the qualifications for holding a matai name or title. The evidence established that each of the remaining three candidates possesses these qualifications and is, therefore, eligible for registration as the holder of a matai name or title.

Section 933 of the A. S. Code, as amended, prescribes the law which the Court shall follow in determining which one of opposing candidates for a matai name shall be registered as its holder. It reads as follows:

"Consideration Given by Court: In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail;

(b) The wish of the majority or plurality of those members of the family related by blood to the title;

(c) The forcefulness, character, personality and capacity for leadership of the candidate;

(d) The value of the holder of the matai name to the Government of American Samoa."

Each of the three remaining candidates filed his pedigree with the Court and testified as to his relationship to the title. Teleai T. is the grandson of Fofo Suaese and has $\frac{1}{4}$ Fofo blood in his veins. Tuliau is the great-great-great grandson of Fofo Tausilinuu and has $\frac{1}{32}$ Fofo blood in his veins, while Iosefa is the great-grandson of Fofo Manu II and has $\frac{1}{8}$ Fofo blood in his veins. The Court finds that Teleai T. stands first on the issue of hereditary right, Io-

sefa second, and Tuliau third, i.e., that Teleai T. prevails over both Iosefa and Tuliau on this issue while Iosefa prevails over Tuliau on it.

The three candidates each filed a petition with the Court purporting to be signed by those blood members of the Fofo Family supporting his candidacy. There were 1684 signers on the petition for Tuliau, 530 on the petition for Iosefa, and 200 on the petition for Teleai. Each candidate testified that all of the signers on his petition were blood members of the family.

Iosefa claimed that 150 out of the 200 signers on Teleai's petition were not blood members of the Fofo Family. He objected to 1507 on Tuliau's petition primarily upon the ground that most of them were not blood members. However, Iosefa also pointed out to the Court that two on Tuliau's petition were dead; that some people had signed twice; that a number of the signers were actually in Hawaii or on the United States Mainland and that they could not have signed in Samoa as they were supposed to have done; that a number of husbands and their wives had signed on Tuliau's petition when it is the custom in Samoa for a blood member of a family not to marry another blood member. Iosefa also pointed out to the Court that many of the signatures on Tuliau's petition were forged, as is apparent to anyone examining the petition. For example, the names of H. Sotoa, Sarena, and Fareti on Sheet 38 of Tuliau's petition were clearly written by the same hand. Anyone examining Sheet 6 in Tuliau's petition can readily see that most, if not all, of the 31 purported genuine signatures on that sheet were written by the same hand and that the ages of the supposed signers were also written by the same hand. It is also clear that many of the supposed signatures on Sheet 14 were written by the same hand. The same thing can be said about a number of the signatures on some other sheets in Tuliau's petition. The name of R. So-

toa, age 54, of Fagaalu, appears on Sheet 2 of Tuliau's petition. It also appears a second time on Sheet 38 with the given age as 54 and village as Fagaalu. These two signatures are not in the same handwriting. R. Sotoa is President of the Senate, a responsible person. He did not sign twice. It is clear that one signature is a forgery.

The signature of Maotala of Auasi appears on Sheet 3 of Tuliau's petition and again on Sheet 34. The name Suaui T. of Fagasa appears on Sheet 33 and a second time on Sheet 42. The evidence indicated that a number of the signers on Tuliau's petition were under the age of 14 years, although the ages given after their names on the petition were 14 or over. Pea, a little 11-year-old boy from Alao, testified that he signed on Tuliau's petition. His age is given as 28. He did not know what he was signing. A man brought him the petition and told him to sign, and he did. Poumele had the petition stuck in front of him at the airport and was told to sign, which he did, without knowing what he was signing. A very serious indictment of Tuliau's petition arises from the fact that on Sheets 56 and 57 ditto marks appear under the name of F. Tausilinuu (the Fofo from who Tuliau claims descent and from whom he claims the 1684 on this petition descended) without any signatures to go with the ditto marks. In more than one instance, there were names on Tuliau's petition when the evidence showed that there were no such persons in the villages where they were supposed to have signed. For example, Sape, Fa'ano and Malo are given in Tuliau's petition as living in Alao. However, the evidence was that Sape had gone to the States long ago and that there was no Malo or Fa'ano in Alao. It is apparent from the supposed signatures of these three persons that all of them were written by the same hand and are forgeries.

According to Tuliau, Tuliau is the great-great-great-

grandson of Fofo Tausilinuu, i.e., Tuliau is a fifth generation descendant of Tausilinuu.

The September 25, 1956 census report shows that on that date the total population of American Samoa was 20,154 of whom 19,479 were Samoans or part-Samoan. The report of the April 1, 1960 census shows that on that date the total population of American Samoa was 20,085. The population is obviously almost stationary. Of the 19,479 Samoans and part-Samoans (this figure excludes Europeans and people from other Pacific islands) in American Samoa on September 25, 1956, the report of the September 25, 1956 census shows that 9,158 of the 19,479 were under the age of 14 years. That leaves 10,321 Samoans and part-Samoans who on September 25, 1956 were 14 years of age or over. If there were 10,321 Samoans and part-Samoans, age 14 or over, in American Samoa on September 25, 1956, it is reasonable to assume that there were not quite that many on April 1, 1960, since the total population of American Samoa decreased from 20,154 on April 25, 1956 to 20,085 on April 1, 1960. And since many Samoans have left American Samoa for the States, including Hawaii, since April 1, 1960 (a number of the people who were supposed to have signed Tuliau's petition in American Samoa were in the States when it was circulated here), there is no reason to suppose that there has been an increase in the population in the last 21 months (April 1, 1960 to January 1962). However, if it be conceded that the Samoan population has not decreased since September 25, 1956 (although it has to a slight degree), it follows that if all the 1,684 (of which 106 signed in Western Samoa) supposed signers on Tuliau's petition are descendants of Tausilinuu, who lived five generations back, and all of them are 14 years of age or over, then Tausilinuu is the blood ancestor of 1578 (1684 less 106) out of the 10,321 (19,479 less 9,158) Samoans and part-Samoans in all of American

Samoa 14 years of age or over, assuming that the proportion of persons 14 years of age or over in the population has remained the same since September 25, 1956. And there is no reason to suppose that there has been any substantial change. In other words, Tausilinuu is the blood ancestor (and he goes back only five generations from Tuliau, according to Tuliau's pedigree) of 15.3% (1578 divided by 10321) of all the Samoans and part-Samoans in American Samoa, although there must have been a thousand other men in what is now American Samoa when Tausilinuu lived. If he were the ancestor of 15.3% of the entire Samoan population, that means that the equivalent of 15.3 American Samoans out of 100 are his descendants, i.e., over one in seven. That such a thing happened in five generations cannot be believed. And that does not take into consideration the 106 of his supposed descendants in Western Samoa, which if considered would make him the ancestor of the equivalent of almost one in six of the entire Samoan population in American Samoa. With a thousand other Samoan men living at the same time in what is now American Samoa (there was no evidence that Tausilinuu had more than one wife), it is impossible to believe that one man with one wife who lived five generations back of Tuliau could have his blood in the equivalent of 15.3 Samoans and part-Samoans out of every 100 such persons in the whole of American Samoa 14 years of age or over. This bears out the truth of the evidence to the effect that on Tuliau's petition there were many forgeries, people signing twice, husbands and wives signing, people under 14 signing with their ages given as over 14, people in the United States including Hawaii signing when they were not in American Samoa to sign, dead people signing, people signing who did not know what they were signing, and many people signing who had no Fofo blood.

Tuliau knew the contents of only four of the 58 sheets in his petition. His presenting a petition containing so much evidence of fraud was a serious reflection upon Tuliau's character, as was his swearing to the genuineness of his signature on his agricultural report and later denying it was his genuine signature, and then swearing again on the stand that is was genuine. His testimony at one time must have been false.

Tuliau objected to 140 on Teleai's petition, claiming that only 60 out of the 200 on Teleai's petition had Fofo blood. Tuliau also claimed that only 25 out of the 530 on Iosefa's petition had Fofo blood.

Teleai admitted that 447 out of the 530 on Iosefa's petition had Fofo blood. Teleai objected to about 642 on Tuliau's petition, the objections being (1) that in some instances the name of the Fofo from whom the signer was supposed to have descended was not given, (2) that in other instances no age of the signer was given, and (3) that in still other instances the village in which the signer resided was not given. At first, Teleai stated that the remaining 1042 on Tuliau's petition were blood members, but upon further questioning it was clear that he did not know whether they were blood members or not.

There is a tremendous amount of contradictory testimony in this case as to the number of actual Fofo blood members on the various petitions. Teleai admitted that there were 447 blood members on Iosefa's petition. There were only 200 signers on Teleai's petition, of whom Tuliau said 140 were not blood members and Iosefa said 150 were not blood members. It is our conclusion from the evidence that Iosefa prevails over Teleai on the issue of the wish of the majority or plurality of those members of the family related by blood to the title.

Without making an actual decision as to whether Tuliau prevails over Iosefa and Teleai on this issue (it is not nec-

essary for us to do so), we shall assume in reaching our decision, despite the fraud that permeates his petition, that he prevails over both Iosefa and Teleai on the issue of the wish of the majority or plurality of those members of the Fofo Family related by blood to the title. We cannot do him an injustice in making such an assumption.

The applicant Iosefa is 24 years old. He is a graduate of the Samoan High School and the University of Hawaii where he received a Bachelor of Arts degree. In addition, after his graduation he had a half-year of graduate work, mostly in economics, at the University of Hawaii. Iosefa did not have his education handed to him on a platter. He worked his way through the University of Hawaii. He speaks English perfectly. Iosefa, upon his return to Samoa from the University of Hawaii a year ago, was appointed Administrative Assistant to the Director of Samoan Affairs. His salary is approximately $3,000 a year. This is a very responsible position in the Government. He is senior officer of the Boys' Brigade in Fagatogo and teaches a boys' Bible class in leadership. Iosefa has about three acres of plantations. He is able to support himself and his family and does not have to rely upon aiga for financial aid.

Teleai, who is 45 years old, completed the 7th grade in school. He speaks a little English. Teleai served in the Samoan Marines during the war. After the war, he attended the vocational school, established by the U.S. Government in Utulei for Samoan war veterans, for 1½ years, but he did not graduate. Teleai has rendered service to the Faumuina title in Tau. He worked on family plantations after leaving school. He studied carpentry in the vocational school. His plantations are on Faumuina land. He has no plantations on Fofo land. Teleai belongs to a group of nine carpenters who build a house occasionally in Manua. After the 1959 hurricane, his group built five guest houses. He and three of his group built a house in Masefau in Tu-

tuila. He received $50, some fine mats and tapas for his work on houses in 1961. He testified that he sold from $170 to $200 worth of copra a year. Teleai received about $10 for taro in 1961. He has some cocoa in his plantations and will sell some cocoa when his trees begin to bear. Last year he sold a pig for $40. His brother in the States sends him about $20 every two months, and his niece sends him $15 to $20 a month.

Tuliau, 45 years old, completed the 6th grade in the faifeau's school and graduated from the 9th grade in Papatea School in Tau in 1936. He speaks English fairly well. After his graduation from Papatea, Tuliau remained in Tau and rendered service to his father and the village. During the war, he worked as a laborer in installing a submarine net across the entrance to Pago Pago Bay and also worked on the installation of radio towers at Vailoatai and radio stations on Olotele. He also worked on the construction of gun foundations near Utulei. He worked as an agricultural extension agent in Manua in 1956–57. He was a census enumerator in Manua for a few days in 1960. In 1961 he went to work again as an agricultural extension agent. As such agent, he inspects plantations and shows farmers how to plant their plants. Between 1945 and 1956 he served his matai. He has served the Maui title, the Tauanuu title, and the Tauala title. He has not served the Fofo title. He has held the Tuliau title for about a year. Tuliau's salary as an agricultural extension agent is $83 and a few cents a month. He sells produce, i.e., copra, bananas, cocoa, yams, and taro, for which he receives from $175 to $200 a year. He received about $50 for carpenter work in 1961. Tuliau receives $15 to $20 a month from aiga in the States.

During the six days consumed in the hearing of this case, the judges had an excellent opportunity to observe the personalities of the respective candidates. It is our conclusion from the evidence and our observations that Iosefa ranks

first on the issue of forcefulness, character, personality and capacity for leadership, Teleai second, and Tuliau third, and we so find.

This Court has said many times that the value of the holder of a matai title to the Government depends to a considerable degree upon his capacity for leadership. *Toatolu et al. v. Laumea*, No. 51-1961 (H.C. of Am. S.). In this case, Iosefa has demonstrated his capacity for leadership by working his way through the University of Hawaii and getting a university education. He did not have to be supported while attending the University. He had the energy, ability, and determination necessary to work his own way through the University. The fact that he has procured a university education and holds a very responsible position in the Government as Administrative Assistant to the Director of Samoan Affairs is evidence of his capacity for leadership. While the Director is absent from his office on a trip to Swains Island, Iosefa is taking care of the duties of the Director. It is our conclusion from the evidence, and we so find, that Iosefa ranks first on the issue of the value of the holder of the matai name to the Government of American Samoa, Teleai second, and Tuliau third.

We have found that Iosefa prevails over Teleai on the second, third, and fourth issues, while Teleai prevails over Iosefa on the first issue only. Pursuant to the statute, we must give more weight to the second, third, and fourth issues combined than to the first issue. It follows, therefore, that as between Iosefa and Teleai, Iosefa is entitled to be registered as the holder of the Fofo title. And we have found that Teleai prevails over Tuliau on the issue of hereditary right (he has ¼ Fofo blood while Tuliau has ¹/₃₂) and also on the issue of forcefulness, character, personality and capacity for leadership (as we have said, Tuliau's presenting a petition permeated with fraud was a very serious reflection upon his character).

We have also found that Teleai prevails over Tuliau on the issue of the value of the holder of the matai name to the Government of American Samoa. If it be assumed, but without deciding, that Tuliau prevails over Teleai on the issue of the wish of the majority or plurality of those members of the family related by blood to the title, it follows, since the first, third and fourth issues combined must be accorded more weight than the second issue, that, as between Teleai and Tuliau, Teleai is entitled to be registered as the holder of the Fofo title.

We have found that Iosefa prevails over Tuliau on the issue of hereditary right (he has $1/8$ Fofo blood while Tuliau has $1/32$). We have also found that Iosefa prevails over Tuliau on the issue of forcefulness, character, personality, and capacity for leadership, and on the issue of the holder of the matai name to the Government of American Samoa. If it be assumed, but without deciding, that Tuliau prevails over Iosefa on the issue of the wish of the majority or plurality of those members of the family related by blood to the title, it follows, since we must give more weight to the first, third and fourth issues combined than to the second issue alone, that, as between Iosefa and Tuliau, Iosefa is entitled to be registered as the holder of the Fofo title.

It follows from the foregoing, since as between Iosefa and Teleai, Iosefa is entitled to be registered as the Fofo, and since as between Iosefa and Tuliau, Iosefa is also entitled to be so registered, that Iosefa should be registered as the Fofo.

### DECREE

Accordingly, it is ORDERED, ADJUDGED AND DECREED that Iosefa F. Sunia shall be registered as the holder of the Fofo title attached to the Village of Tau, Manua.

The Registrar of Titles will be advised of this decree. Costs in the sum of $129.00 are hereby assessed against Tuliau and Teleai, each of them to pay $64.50 within 60 days.